IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) CRIM. ACTION 22-0222-WS |
| | ) |
| TRE'VON DEVONTE LEWIS, | ) |
| | ) |
| Defendant. | ) |

**ORDER**

This matter is before the Court on the defendant's motion to suppress, (Doc. 29), to which the government has responded. (Doc. 37). Neither side requests an evidentiary hearing, and the motion is ripe for resolution.

The defendant is charged with being an unlawful drug user in possession of a firearm and with being in possession of a firearm he knew or had reasonable grounds to believe was stolen. (Doc. 1). According to the incident report, which the defendant has introduced in support of his motion, task force members observed a crowd standing in an open field. Deputy Kiser noticed a strong odor of burnt marijuana coming from the location where several individuals, including the defendant, were gathered. As Kiser and others approached to initiate contact with this group, the defendant walked away very quickly. He halted upon police order but attempted to pass off a bag in his possession to another individual. The defendant complied with an order to surrender the bag to an agent, who found the bag to be heavy and giving off a strong odor of marijuana. The marijuana and firearm on which the prosecution is based were found in the bag. The defendant thereafter made incriminating post-Miranda statements. (Doc. 29 at 12-13).

The defendant raises two arguments for why the physical evidence and statements should be suppressed: (1) an odor of marijuana cannot support reasonable suspicion, because a legal substance (hemp) gives off an

indistinguishable odor; and (2) the officers' failure, in violation of policy, to activate their body cameras renders their testimony incredible as a matter of law. The defendant's 1½-page argument cites no authority in support of either proposition. The government's one-page argument is equally devoid of relevant legal authority.[1]

### A. Reasonable Suspicion.

"[T]he smell of marijuana alone may provide a basis for reasonable suspicion for further investigation of possible criminal conduct …." *United States v. White*, 593 F.3d 1199, 1203 (11th Cir. 2010). The defendant argues that *White* is no longer good law because the recent legalization of hemp (which emits an odor indistinguishable from marijuana) means that the smell of marijuana is no longer "in and of itself indicative of any criminal activity." (Doc. 29 at 3).

"The Fourth Amendment [permits] police [to] stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity *may be afoot*, even if the officer lacks probable cause." *United States v. Bishop*, 940 F.3d 1242, 1248 (11th Cir. 2019) (internal quotes omitted, emphasis added). Because reasonable suspicion does not require an officer to rule out every non-criminal explanation for what he perceives, the mere fact that the odor of marijuana could be emanating from a legal source cannot eliminate a reasonable suspicion that it is emanating from a controlled substance. *See, e.g., United States v. McCallister*, 39 F.4th 368, 373, 375 (6th Cir. 2022) (that the source of an odor of marijuana "could have been illegal or legal" did not undermine reasonable suspicion, because the odor

---

[1] The government cites only *Terry v. Ohio*, 392 U.S. 1 (1968). *Terry* does not support the government's argument that the officers were free, on the grounds of officer safety, to search the bag without a warrant after the defendant had already relinquished control of the bag to them. (Doc. 37 at 2-3). Because the defendant makes no argument regarding the search of the bag, the Court pretermits further discussion.

"suggest[s] at least a moderate chance" the source is marijuana, and reasonable suspicion "does not require proof that the suspect committed a crime"); *Lingo v. City of Salem*, 832 F.3d 953, 961 (9th Cir. 2016) (because "[i]t is decidedly not the officers' burden to rule out the possibility of innocent behavior in order to establish probable cause," officers' smelling of marijuana supplied probable cause despite the defendant's protestation that she was burning hemp incense) (internal quotes omitted); *United States v. Bignon*, 813 Fed. Appx. 34, 37 (2nd Cir. 2020) (because "probable cause may exist even when a suspect is in fact innocent," it existed even though the defendant "repeatedly [and truthfully] told the arresting officers that he was smoking hemp, not marijuana") (internal quotes omitted); *United States v. Boggess*, 444 F. Supp. 3d 730, 737 (W.D.W. Va. 2020); *United States v. Colbert*, 2022 WL 17821346 at *3 (N.D. Ohio 2022); *United States v. Hardin*, 2022 WL 19267 at *4 (M.D. Fla. 2022).

The Court agrees with these authorities and their reasoning. Despite the legality of hemp, an odor of marijuana still supplies reasonable suspicion as per *White*.[2]

---

[2] That the officers detected the odor of marijuana coming from a group of several individuals and not specifically and exclusively from the defendant does not eliminate reasonable suspicion as to him. *United States v. Roberts*, 849 Fed. Appx. 863, 867 (11th Cir. 2021) (because "it strains credulity to say that the detectives, who smelled marijuana coming from a group of only four or five individuals, could not briefly detain those individuals simply because they could not point to any particular person with certainty and say the smell emanated from them," the officers' reasonable suspicion was sufficiently particularized). The defendant does not argue otherwise.

The defendant does complain that his "walking away very quickly" cannot furnish reasonable suspicion, on the grounds that it is a more measured retreat than the "headlong flight" that supported reasonable suspicion in *Illinois v. Wardlow*, 528 U.S. 119, 1124-25 (2000). Because the odor of marijuana is itself sufficient to supply reasonable suspicion, the speed of the defendant's departure from the scene is unnecessary to the legality of the stop. The Court does note, however, that "any kind of flight, even walking away, might support a finding of reasonable suspicion …." *United States v. Franklin*, 323 F.3d 1298, 1302 (11th Cir. 2003).

### B. Failure to Activate Body Camera.[3]

Several decisions from sister courts "hol[d] that failure to activate can be a factor in assessing an officer's credibility, which can tilt the credibility analysis in a close case where the officer's testimony is controverted." *United States v. Garcia*, 554 F. Supp. 3d 421, 431 (E.D.N.Y. 2021) (citing cases). As noted, the defendant has neither controverted the incident report nor requested an evidentiary hearing at which to do so. Nor, given the report and the applicable law discussed in Part A, is this a close case.

The *Garcia* Court identified another line of cases concluding that the failure to activate a body camera "deprives the Court of the best evidence available." 554 F. Supp. 3d at 431 (citing *United States v. Gibson*, 366 F. Supp. 3d 14 (D.D.C. 2018)). Neither *Gibson* nor *Garcia*, however, held that the mere failure to activate automatically requires rejection of an officer's testimony.

*Gibson* turned on whether an officer ordered the defendant to reveal his waistband or only requested to see it. 366 F. Supp. 3d at 21. The questioning officer did not testify, but only his partner. There was video evidence of the encounter but no audio, because the officers had not activated their devices. *Id*. at 19.[4] After an evidentiary hearing, the *Gibson* Court credited the defendant's version of events over the testifying officer's because: (1) the officer did not remember, or misremembered, critical facts regarding what occurred and what was said during the encounter; (2) the officer testified that the defendant never raised his hands, even though the video evidence clearly showed that he did so; (3) the

---

[3] The government asserts that Kiser's body camera was in fact operating during his encounter with the defendant, rendering irrelevant the failure of other officers to activate their devices. (Doc. 37 at 3). Because the government offers no evidence that Kiser's camera was operating, the Court assumes for present purposes that it was not.

[4] The officers activated their cameras when the defendant fled. Because their cameras stored visual footage (but not sound) for the two minutes immediately preceding activation, the Court was able to view the encounter but not hear the conversation. 366 F. Supp. 3d at 19.

4

officer spoke only as to his partner's usual manner of speaking to citizens, not as to what the officer actually said during the incident in question; (4) the video evidence of the defendant raising his hands corroborated the defendant's position that he had been ordered to show his waistband; and (5) the testifying officer's demeanor and testimony was evasive, inconsistent, and implausible. *Id*. at 22-27. The Court noted that the officers' failure to activate their body cameras "deprived the Court from reviewing the best evidence available," *id*. at 27, but this plainly was not the sole or even primary reason for the Court's adverse credibility finding; the failure to activate instead constituted a missed opportunity for the government to demonstrate the legality of the encounter.

The *Garcia* Court placed more emphasis on the failure to activate, but it did so by making the failure a tiebreaker between "the officer and homeowner's conflicting testimony." 554 F. Supp. 3d at 431.[5]  Again, the defendant has not presented an alternative version of the facts or requested an evidentiary hearing at which to do so. There is thus no conflicting testimony as to which the failure to activate could be relevant.

A number of cases have considered whether, and under what circumstances, the failure to activate a body camera may support a due process argument under *Arizona v. Youngblood*, 488 U.S. 51 (1988). Assuming for purposes of argument that *Youngblood* extends to the failure to *create* exculpatory evidence, the cases uniformly conclude that the mere failure to activate body cameras in violation of policy does not of itself establish the bad faith that is

---

[5] The *Garcia* Court did not examine *Gibson* or give any rationale for elevating the evidentiary significance of a failure to activate body cameras far beyond that assigned by the *Gibson* Court.

essential to a due process violation.[6]  Because the defendant's single argument is confined to credibility, not constitutionality, the Court need not adopt a position.

One point more.  The defendant has not explained how body camera evidence, if it existed, could undermine, much less negate, the existence of reasonable suspicion.  The officers' reasonable suspicion of criminal activity in this case was based on what they smelled, and their cameras would not have recorded odors.  Moreover, the policy requires that body cameras be activated only "to record all contacts with citizens," (Doc. 29 at 8), and the officers smelled burnt marijuana – and thus possessed reasonable suspicion – before initiating contact. (*Id*. at 12).  That is, they were not in violation of policy at the time the grounds for the stop were established.  *See United States v. Tillard*, 2020 WL 57198 at *5 (W.D.N.Y. 2020) (where there was no evidence that policy required activation of cameras prior to the alleged traffic violation justifying the traffic stop, "it is unclear how the body-worn camera footage would have impacted the analysis with respect to the lawfulness of the stop itself").

For the reasons set forth above, the defendant's motion to suppress is **denied**.

DONE and ORDERED this 3rd day of August, 2023.

                                                   s/ WILLIAM H. STEELE
                                                   UNITED STATES DISTRICT JUDGE

---

[6] *United States v. Aguirre-Cuenca*, 2023 WL 245710 at *3 (4th Cir. 2023); *Durr v. Slator*, 558 F. Supp. 3d 1, 36 (N.D.N.Y. 2021); *United States v. Taylor*, 312 F. Supp. 3d 170, 178 (D.D.C. 2018); *United States v. Savage*, 2021 WL 7186266 at *5 (E.D. Okla. 2021), *report and recommendation adopted*, 2022 WL 118408 (E.D. Okla. 2022); *United States v. Tillard*, 2020 WL 57198 at *5 (W.D.N.Y. 2020).